# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
                                    :
     v.                             :
                                    :
KASSIM TAJIDEEN,           :
also known as                 :
HAJ KASSIM, BIG HAJ, BIG BOSS,     :     Case No. 1:17-CR-00046 (RBW)
QASIM TAJIDEEN, QASSIM TAJIDEEN,   :
KASSEM TAJIDEEN, KASSIM TAJ ALDINE,  :
KASSIM TAJ ALDIN, KASSIM TAJ AL-DIN,  :
KASSIM TAJ AL-DINE, and      :
KASSIM TAJADIN,           :
                                    :
             Defendant.     :

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SUBMITTED TO OFAC AND REQUEST FOR EVIDENTIARY HARING

The United States of America, by and through the undersigned attorneys, respectfully opposes Defendant's Motion to Suppress Statements Submitted to OFAC and Request for Evidentiary Hearing, filed on May 11, 2018, ECF No. 152. In support of its opposition, the government relies on the points, authorities, and arguments cited in the accompanying memorandum, as well as any others that may be raised at any hearing on this matter.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By:         _____/s/_____
                Luke M. Jones, VA Bar #75053
                Thomas A. Gillice, D.C. Bar #452336
                Maia Luckner Miller, VA Bar #73221
                Assistant United States Attorneys
                Jacqueline L. Barkett, NY Bar #5424916

Special Assistant United States Attorney
National Security Section
United States Attorney's Office
555 4th Street NW, 11th Floor
Washington, D.C.  20530
(202) 252-1791
luke.jones@usdoj.gov
thomas.gillice@usdoj.gov
maia.miller@usdoj.gov
jacqueline.l.barkett@usdoj.gov


And

DEBORAH CONNOR
ACTING CHIEF

By: _____/s/_____
Joseph Palazzo, MA Bar #669666
Trial Attorney
Money Laundering and Asset Recovery
  Section, Criminal Division
United States Department of Justice
1400 New York Avenue NW, 10th Floor
Washington, D.C.  20005
(202) 514-1263
joseph.palazzo@usdoj.gov

Dated: June 1, 2018

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| KASSIM TAJIDEEN, | : | |
| also known as | : | |
| HAJ KASSIM, BIG HAJ, BIG BOSS, | : | Case No. 1:17-CR-00046 (RBW) |
| QASIM TAJIDEEN, QASSIM TAJIDEEN, | : | |
| KASSEM TAJIDEEN, KASSIM TAJ ALDINE, | : | |
| KASSIM TAJ ALDIN, KASSIM TAJ AL-DIN, | : | |
| KASSIM TAJ AL-DINE, and | : | |
| KASSIM TAJADIN, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO SUPPRESS STATEMENTS SUBMITTED TO OFAC AND REQUEST FOR
EVIDENTIARY HEARING**

The defendant, Kassim Tajideen, moves to suppress evidence in this criminal case that he provided to the U.S. Department of the Treasury in an administrative proceeding that he, himself, initiated with the assistance of counsel.  The defendant provided this evidence to the Treasury Department's Office of Foreign Assets Control ("OFAC") in support of his "delisting" petitions, in which he sought reconsideration of OFAC's designation of the defendant as a specially designated global terrorist.   OFAC's consideration of the defendant's petitions was neither a government investigation nor a compulsory proceeding of any kind.  Now, as the defendant faces a criminal prosecution for, among other charges, conspiring to defraud the government by interfering with and obstructing OFAC's lawful government functions, the defendant claims that the materials he submitted to OFAC in support of his delisting petitions cannot be used against him.  This claim is meritless.

## BACKGROUND

On May 27, 2009, OFAC designated the defendant as a person whose property and interests in property were blocked pursuant to Executive Order 13224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) ("Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten To Commit, or Support Terrorism").  *See* 74 Fed. Reg. 26,475 (June 2, 2009) (Federal Register publication of OFAC's designation of the defendant).   Among other consequences of this designation, it was thereafter generally a violation of OFAC regulations for United States persons to engage in transactions with the defendant without a license from OFAC.  *See*  31 C.F.R. §§ 594.201, 594.204.  In addition, "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of" such a violation of OFAC regulations was thereafter subject to criminal penalties under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705.  The defendant in the instant matter is charged with violating IEEPA, among other charges.

### *OFAC's Procedures for Delisting*

Persons such as the defendant, who are designated by OFAC, "may seek administrative reconsideration of his . . . designation . . . or assert that the circumstances resulting in the designation no longer apply, and thus seek to have the designation rescinded pursuant to [certain] administrative procedures." 31 C.F.R. § 501.807 ("Procedures governing delisting from the Specially Designated Nationals and Blocked Persons List").  Specifically, a person "may submit [to OFAC] arguments or evidence that the person believes would negate the basis for the designation"; "[t]he information submitted . . . will be reviewed by [OFAC], which may request clarifying, corroborating, or other additional information"; the person "may request a meeting with [OFAC]," although "such meetings are not required and [OFAC] may, at its discretion, decline to

conduct such meetings prior to completing [its] review"; and, "[a]fter [OFAC] has conducted a review of the request for reconsideration, it will provide a written decision to the blocked person." *Id.*  A person may also challenge an OFAC listing—or an OFAC denial of a delisting petition—in federal district court under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et. seq. See, e.g.*, *Zevallos v. Obama*, 793 F.3d 106, 112 (D.C. Cir. 2015) (affirming district court's rejection of petitioner's challenge).

*Defendant's Delisting Petitions and Material Submitted to OFAC*

Adopting the facts set forth in defendant's motion, beginning in 2010, he sought delisting from OFAC pursuant to 31 C.F.R. § 501.807.  Mot. 1-2.  Through counsel, the defendant voluntarily submitted material to OFAC, including information responsive to OFAC's follow-up requests. Mot. 1-3. On September 4, 2015, OFAC notified the defendant, through counsel, that his petition was denied, and OFAC subsequently provided the defendant with a copy of the unclassified, non-privileged portions of its administrative record regarding the denial.

On January 13, 2016, the defendant voluntarily submitted another petition to OFAC, again seeking removal from the list of Specially Designated Nationals and Blocked Persons (SDN List) and again providing information and materials for OFAC to consider.  On May 4, 2017, following his arrest in this case, the defendant withdrew his petition.  The defendant never sought to challenge OFAC's listing of the defendant or its administrative denial of his delisting petition in federal court.  Since then, he has not sought a delisting by OFAC, and he has never challenged his listing or OFAC's administrative denial of his delisting petition in federal court under the APA.

**ARGUMENT**

Seeking suppression of the material he provided to OFAC in support of his delisting petitions, the defendant erroneously speculates that the government improperly manipulated the OFAC administrative proceeding to advance "a secret agenda, which was to ensure a criminal conviction." Mot. 8.  The defendant also contends, without any support, that the government's conduct "shocks the conscience" and was "an egregious abuse of [the defendant's] constitutional rights." Mot. 9.  These allegations are baseless.

The defendant's motion relies on inapposite case law regarding limitations on government conduct with respect to "parallel proceedings"—that is, simultaneous or successive criminal, civil, administrative, or regulatory investigations involving a common set of facts.  *See* Mot. 5-9 (citing cases).  The defendant concedes, however, "[t]his case does not clearly fit within [the] existing precedent because the parallel proceeding here is not a traditional government-initiated civil enforcement matter, such as an SEC or IRS investigation that has criminal implications." Mot. 7.  This concession is dispositive of this issue.  Indeed, the defendant cannot cite any authority, because none exists, to support his argument that such precedent is applicable here, where the purported "parallel proceeding" was a petition initiated by the defendant—not the government—and where his submissions to the government, through his counsel, were entirely voluntary.

Where courts have identified limitations on the government's coordination between criminal and non-criminal investigations, the "parallel" non-criminal investigations were initiated by the government.  For example, in *United States v. Kordel*, 397 U.S. 1, 10-12 (1970), the Supreme Court ruled that the government's use in a criminal proceeding of information provided in response to interrogatories in a government-initiated civil action did not violate due process or the defendant's Fifth Amendment privilege, because the government did not act in "bad faith."  In

6

*SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) (en banc), the court ruled that a criminal investigation did not bar enforcement of an administrative subpoena, and the court noted that *deferral* of civil proceedings may be appropriate "where there is specific evidence of agency bad faith or malicious government tactics" or "where a party under indictment for a serious offense is *required* to defend a civil or administrative action involving the same matter." *Id.* at 1375-76 (emphasis added)).

By contrast, the defendant in this case initiated the proceeding in which he provided evidence to the government that he now seeks to suppress—a fact that significantly distinguishes his circumstances from those in the cases he cites.[1]  None of OFAC's requests for information were compulsory, in contrast to an administrative subpoena or civil discovery demand.  Indeed, had the defendant not sought delisting, OFAC would not have had any reason to engage with the defendant or his counsel.

The defendant contends, hyperbolically, that his designation by OFAC placed him "between a constitutional Scylla and Charybdis," that he was coerced into "choosing between his right to due process and his privilege against self-incrimination," and that he was "caught in a cross-fire of government investigations." Mot. 8.  As he appears to acknowledge, however, the process by which OFAC designates persons and the post-designation remedies available to such persons are well-established and lawful. Mot. 7-8 (citing *Holy Land Found. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003).  Accordingly, no matter what complaints the defendant may assert regarding

---

[1] *See e.g.*, *United States v. Posada Carriles*, 541 F.3d 344 (5th Cir. 2008) (government did not engage in fraud, deceit or trickery in connection with civil investigation that subsequently led to prosecution; order suppressing statements and dismissing indictment on Fifth Amendment due process grounds reversed); *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977) (government misled defendant into believing that criminal investigation was a routine tax audit; consent to provide records was induced by affirmative, material misrepresentation and, accordingly, an unreasonable search in violation of the Fourth Amendment); *United States v. Scrushy*, 366 F.Supp.2d 1134 (N.D. Ala. 2005) (suppressing use, in criminal case, of deposition given by defendant in civil investigation because parallel criminal and civil investigations improperly merged and "departed from the proper administration of justice").

the process by which he was designated, the opportunities available to challenge his designation, or OFAC's denial of his delisting petition, those complaints are no basis for the relief he seeks here—that is, suppression of evidence in a criminal case—and the defendant presents no authority to the contrary.  For these reasons, the defendant's motion fails as a matter of law.

Moreover, the defendant fails to establish that the government's conduct in this case provides any basis for relief.  In OFAC's consideration of the defendant's delisting petition, including its requests of the defendant for additional information, the agency was acting in response to the defendant's petition and was fulfilling its legal obligations.  *See* 31 C.F.R. § 501.807 (OFAC's delisting procedures). The defendant's characterization of the delisting proceeding as, in effect, an affirmative effort by the government to obtain information from the defendant to support a criminal prosecution is unfounded speculation.[2]

It is entirely proper, of course, for the government, in this criminal prosecution, to rely on the evidence that the defendant submitted to OFAC as part of his delisting petition.  Indeed, the disclosure of such material by OFAC to the Department of Justice is a "routine use," and the defendant and his counsel were on constructive (if not actual) notice of this fact.  *See* System of Records Notice for "Records Related to Office of Foreign Assets Control Economic Sanctions." See DO.120, 79 Fed. Reg. 215 (Jan. 2, 2014) (stating that records and information relating to designated persons may, as a routine use, be disclosed "to further the efforts of appropriate Federal, state, local, or foreign agencies in investigating or prosecuting the violations of, or for enforcing or implementing, a statute, rule, regulation, order, license, or agreement").  The defendant presents

---

[2] In passing, the defendant asserts that the government's conduct "shocks the conscience" and was "an egregious abuse of [the defendant's] constitutional rights." Mot. 9.  To the extent that the defendant is attempting to present an independent claim of prosecutorial misconduct, he provides no factual basis (beyond the erroneous speculation noted above) and no legal authority.  Any such claim is therefore meritless and, in addition, should be rejected by the Court as insufficiently pled.  *See New York Rehab. Care Mgmt v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.").

no contrary authority.

It is likewise proper—indeed, routine—for the government to conduct a criminal investigation in secret. *See* Fed. R. Crim. P. 6(e). And the defendant's contention that he is entitled to suppression based on the government's "failure" to advise him of the criminal investigation misconstrues the cases upon which he relies. *See* Mot. 5-8. No court assessing the lawfulness of parallel proceedings has suggested that—absent evidence that the non-criminal proceeding was pre-textual or pursued in bad faith—a "failure" to advise or warn a target of a pending or contemplated criminal investigation could ever justify suppression.

Lastly, the defendant fails to justify his request that this Court hold an evidentiary hearing and require the government "to produce witnesses and documents sufficient to show: (1) when the criminal investigation began and (2) the nature and details of coordination between the OFAC personnel working on the delisting proceeding and the DOJ/DEA personnel working on the criminal investigation." Mot. 9. Because the defendant's suppression claim lacks any legal basis and is premised entirely on speculation regarding misconduct that never occurred, his hearing request is, at best, a fishing expedition, and, it appears, merely an attempt to re-litigate the Court's ruling that the defendant is not entitled to OFAC records, except as required by Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963). Order, ECF. 36. For these reasons, the Court, in its discretion, should deny the defendant's request for a hearing. *See In re Sealed Case*, 877 F.2d 976, 982 (D.C. Cir. 1989) ("[A] district court has ample discretion to inquire into any credible claim of prosecutorial misconduct."); *cf. Delaware v. Franks*, 438 U.S. 154, 155-56, 171-72 (1978) (requiring a "substantial preliminary showing" of knowing falsity and materiality antecedent to evidentiary hearing on truthfulness of affidavit used to secure warrant); *United States v. Slocum*, 708 F.2d 587, 600 (11th Cir. 1983) (evidentiary hearing on claimed Brady

infraction properly denied where defendants failed to make prima facie showing of harmful violation).

## CONCLUSION

For the foregoing reasons, this Court should deny defendant's motion to suppress the materials he provided to OFAC and should deny the defendant's request for an evidentiary hearing on the suppression motion.

Respectfully submitted,


JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845


By: _____/S/_____
        Luke M. Jones, VA Bar #75053
        Thomas A. Gillice, D.C. Bar #452336
        Maia Luckner Miller, VA Bar #73221
        Assistant United States Attorneys
        Jacqueline L. Barkett, NY Bar #5424916
        Special Assistant United States Attorney
        National Security Section
        United States Attorney's Office
        555 4th Street NW, 11th Floor
        Washington, D.C.  20530
        (202) 252-1791
        luke.jones@usdoj.gov
        thomas.gillice@usdoj.gov
        maia.miller@usdoj.gov
        jacqueline.l.barkett@usdoj.gov


        And

        DEBORAH CONNOR
        ACTING CHIEF

By: _____/S/_____
        Joseph Palazzo, MA Bar #669666
        Trial Attorney
        Money Laundering and Asset Recovery
         Section, Criminal Division
        United States Department of Justice
        1400 New York Avenue NW, 10th Floor
        Washington, D.C.  20005
        (202) 514-1263
        joseph.palazzo@usdoj.gov

Dated: June 1, 2018